UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VANDARRYL H., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL Commissioner of Social )<br>Security Administration, )<br>)<br>Defendant. ) | No. 1:20-cv-01449-SEB-TAB |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.      Introduction**

Plaintiff Vandarryl H. appeals the Social Security Administration's denial of his application for disability insurance benefits. Plaintiff argues that the Administrative Law Judge erred in his assessment of Plainitff's subjective symptoms and by failing to properly evaluate the opinion of Plaintiff's treating source physician. As explained below, the ALJ properly considered Dr. Seele's opinion and provided good reasons for only giving it limited weight. However, in assessing Plaintiff's subjective symptoms, the ALJ described Plaintiff's treatment as conservative and sporadic while ignoring evidence that injections and procedures were recommended but avoided, in part, due to Plaintiff's fear of side effects and potential negative outcomes, lack of insurance approval of injections, and living situation. While the ALJ need not address every piece of evidence in the record, the ALJ's decision must at least demonstrate that the ALJ acknowledged and considered this contradictory evidence when assessing Plaintiff's symptoms. The ALJ's decision does not do that. Accordingly, Plaintiff's request for remand [Filing No. 13] should be granted.

**II.    Background**

On January 12, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. The SSA denied his claim initially and upon consideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled at the time of the decision. First, the ALJ noted that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2020. Next, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 1, 2015, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity, degenerative disk disease, and obstructive sleep apnea. [Filing No. 10-2, at ECF p. 32.] The ALJ found that these medically determinable impairments significantly limited Plaintiff's ability to perform basic work activities as required by SSR 85-28. Additionally, the ALJ noted that Plaintiff has non-severe impairments of depression and hypertension, which the ALJ found had no more than a minimal effect on his ability to perform basic work activities.

At step three, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or his remaining ability to function despite his limitations. The ALJ concluded that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following limitations:

> [Plaintiff can] stand and walk for 2 hours and sit for 8 hours in an 8-hour workday; occasionally perform postural activities except no climbing ladders, ropes, or scaffolds; occasional exposure to extreme heat and cold, wetness, vibration, unprotected heights, and dangerous moving machinery; and use of a handheld assistive device for prolonged ambulation for greater than 30 feet or on uneven terrain.

2

[Filing No. 10-2, at ECF p. 34.]

The ALJ concluded at step four that Plaintiff is unable to perform past relevant work. In addition, the ALJ noted that on the alleged disability onset date, Plaintiff was 35 years old (a younger individual), has a limited education, and can communicate in English. [Filing No. 10-2, at ECF p. 39.] Finally, at step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as: hand packager, small products assembler, and visual inspector-checker. [Filing No. 10-2, at ECF p. 39.] The ALJ concluded that Plaintiff was not disabled.

### III. Discussion

Plaintiff maintains that the ALJ erred by failing to properly evaluate his subjective symptoms and failing to properly discuss a treating source opinion. [Filing No. 13, at ECF p. 4.] The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

### A. Subjective symptom evaluation

First, Plaintiff argues that the ALJ failed to properly apply Social Security Ruling 16-3p in assessing Plaintiff's symptoms. [Filing No. 13, at ECF p. 16.] The regulations describe a two-step process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to procedure the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3 (October 25, 2017). "So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong." Curvin v. Colvin, 778 F.3d 645, 651 (7th Cir. 2015). However, while an ALJ "does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it. The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014) (internal citations omitted).

Here, the ALJ concluded that there was objective evidence of degenerative disk disease, obesity, and sleep apnea, but that Plaintiff's complaints of severe pain limiting his ability to sit, stand, and walk were "not consistent with the medical evidence of record." [Filing No. 10-2, at ECF p. 38.] In so finding, the ALJ defined Plaintiff's treatment consisting of physical therapy and pain medication as "conservative" and sporadic, without acknowledging explanations and evidence to the contrary in the record. Specifically, the ALJ found that Plaintiff's medical records reflect "only conservative treatment consisting of physical therapy and pain medication; he has not had surgery or injections and at the time of the hearing, he was only taking over the

4

counter pain medication. The conservative and sporadic treatment is inconsistent with his reports of 10 out of 10 pain." [Filing No. 10-2, at ECF p. 38.]

As far as the Court can tell, while the ALJ concluded that Plaintiff's records reflected only conservative treatment, this conclusion was not made by any doctor in the record. Courts within the Seventh Circuit have questioned why treatment such as physical therapy and pain medication should be viewed as "conservative" without a medical source reaching such opinion or review of other possible explanations behind supposedly limited treatment. *See, e.g., Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) ("We are not confident that the ALJ would have reached the same conclusion about Hill's credibility had she not inappropriately 'played doctor,' ignored possible explanations for Hill's conservative treatment, and conflated a desire to work with an ability to do so."); *Hungerford v. Berryhill*, No. 1:17-cv-02407-TWP-TAB, 2018 WL 3653199, at *3 (S.D. Ind. July 6, 2018) ("[N]o medical source opined that the treatment was conservative, and the ALJ did not say what a more aggressive treatment for fibromyalgia would be. . . . [T]he question of whether this treatment plan is conservative requires medical expertise to answer because it is not self-evident."), *report and recommendation adopted*, No. 1:17-cv-02407-TWP-TAB, 2018 WL 3651329 (S.D. Ind. Aug. 1, 2018); *Hurlbut v. Colvin,* No. 15 CV 50270, 2017 WL 497774, at *2 (N.D. Ill. Feb. 7, 2017) ("One of the ALJ's rationales for finding plaintiff not disabled was that his medical treatment was supposedly conservative. The ALJ, however, did not provide a clear explanation for this conclusion. . . . The supposedly conservative nature of the treatment is not self-evident to this Court, and the question requires medical expertise to answer."). *See also McGuigan v. Colvin* , No. 1:13-cv-1539-DKL-JMS, 2015 WL 846415, at *5-6 (S.D. Ind. Feb. 25, 2015) ("The Court agrees with Mr. McGuigan that, by not citing, or even alluding to, any expert medical evidence or opinion that non-routine or

5

more aggressive treatments (*e.g.*, back surgeries, hospitalizations, or emergency-room visits) would have been prescribed, recommended, or expected if Mr. McGuigan's impairments and/or symptoms were as severe as he alleged, the ALJ was expressing a medical opinion for which he was not qualified. . . . The ALJ should consider whether he should obtain an additional medical opinion regarding the nature of Mr. McGuigan's treatment in order to support any credibility inference based thereon[.]"); *Banks v. Berryhill*, No. 16 C 8330, 2017 WL 4150618, at *10 (N.D. Ill. Sept. 19, 2017) ("On remand, the ALJ should ask why Plaintiff's treatment was not more aggressive, and if the ALJ determines that the treatment was conservative, he shall discuss why more aggressive treatment would have been appropriate.").

Moreover, while Plaintiff did not have surgery during the relevant period, the record evidence indicates injections were recommended, and his primary physician referred him to neurosurgery and discussed it as another option for treating his back pain. [Filing No. 10-8, at ECF p. 11,17.] However, Plaintiff expressed fear about side effects and potential negative outcomes of these procedures, and at one point his records reflect that he indicated his insurance did not approve the injections. [Filing No. 10-2, at ECF p. 53, 56; Filing No. 10-7, at ECF p. 101; Filing No. 10-8, at ECF p. 10, 35.] Furthermore, Plaintiff argues that while there were gaps in his treatment, his treatment was sporadic because he was homeless for several months. [Filing No. 10-8, at ECF p. 10-11.] The ALJ did not reference any of these facts.

As noted above, it is not the role of the Court to re-weigh the medical evidence, resolve conflicts, or draw conclusions on the Commissioner's behalf. *See Burmester*, 920 F.3d at 510. However, it is the Court's role to ensure that the ALJ's findings are supported by substantial evidence and that the ALJ does not ignore or dismiss contradictory evidence without an explanation. *See, e.g., Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does

6

not support her conclusion and explain why that evidence was rejected."); *Suetkamp v. Saul*, 406 F. Supp. 3d 715, 721 (N.D. Ind. 2019) ("[T]he ALJ's decision does not contain the requisite logical bridge from the evidence to the RFC conclusion where the ALJ selectively cited evidence that supported his conclusion while ignoring evidence supporting Ms. Suetkamp's claim.").

      The ALJ defined Plaintiff's treatment history as conservative and sporadic without acknowledging contrary explanations and evidence in the record. *See, e.g., Hill*, 807 F.3d 862 at 868 ("[T]he ALJ's analysis was flawed in several respects.  First, the ALJ reasoned that Hill's credibility was undermined because she had stopped taking narcotic pain relievers and had complained of back pain to doctors only intermittently.  Yet the ALJ ignored explanations for the conservative treatment."); *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) ("An ALJ must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." (Internal citations and quotation marks omitted)); *Kevin L. H. v. Saul*, No. 1:19-cv-01741-MJD-JRS, 2020 WL 3818954, at *5 (S.D. Ind. July 7, 2020) ("If an individual's symptoms are inconsistent with the evidence in the record on the basis that the frequency or extent of the treatment sought is not comparable with the degree of the individual's subjective complaints, the ALJ is required to consider the possible reasons the individual did not comply with treatment or seek treatment consistent with the degree of his complaints.").

      Thus, this matter should be remanded so that the ALJ may properly acknowledge and evaluate evidence in the record providing potential explanations as to why Plaintiff did not seek additional treatment during the relevant period consistent with the degree of his complaints of pain.  In doing so, the ALJ should also consider whether additional support from a medical expert may be necessary to evaluate whether Plaintiff's treatment was conservative, or if there is

evidence in the record to support or contradict such a finding. As it currently stands, however, the ALJ has not built a logical bridge from the evidence to his conclusion. *See, e.g., Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) ("Whether considered individually or collectively, Ms. Beardsley's descriptions of her day-to-day routine, the opinion of Dr. Brill, and her supposedly conservative treatment were not enough to support a logical bridge from the evidence to the ALJ's conclusion.").

### B. Treating source opinion

Plaintiff also claims that the ALJ failed to properly consider and discuss the opinion of treating source Dr. Jennifer Seele. [Filing No. 13, at ECF p. 21.] Dr. Seele, Plaintiff's primary care physician, wrote a one-page letter, which Plaintiff contends would have deemed Plaintiff disabled if given proper weight. [Filing No. 13, at ECF p. 21.] The ALJ gave only "limited" weight to Dr. Seele's opinion [Filing No. 10-2, at ECF p. 37], and Plaintiff argues that the ALJ did so without specifically addressing the appropriate factors or providing proper analysis for dismissing Dr. Seele's opinion. [Filing No. 13, at ECF p. 21.]

In general, for claims filed before March 2017, "a treating source's opinion is entitled to controlling weight if it is supported by sound medical evidence and a consistent record." *Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020). However, an ALJ may discredit a treating physician's medical opinion so long as he provides good reasons for doing so, such as that the treating source opinion was inconsistent with the other evidence in the record or not well supported by medical findings. *See, e.g., Burmester*, 920 F.2d at 512 ("The exclusion of the treating physicians was not unsupported in the ALJ opinion. Instead, the ALJ provided detailed reasons for his finding that the opinions of Dr. Bustos and Dr. Centena were not supported by the record."); *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) ("And though treating

8

physician's opinions . . . are usually entitled to controlling weight, an ALJ may discredit the opinion if it is inconsistent with the record."  (Internal citation omitted)).

Here, the ALJ noted that Dr. Seele drafted a letter in February 2018, in which she noted that Plaintiff was unable to work because of issues with his lower back causing disk protrusion but could improve within six months.  [Filing No. 10-2, at ECF p. 37.]  The ALJ elaborated that although Dr. Seele was Plaintiff's primary care physician, he assigned Dr. Seele's opinion limited weight for the following reasons:

> First, Dr. Seele's statement regarding [Plaintiff's] inability to work is a blanket statement on an issue that is reserved to the Commissioner.  She did not provide a function by function assessment and she expected improvement within 6 months, indicating she did not expect the disability to last 12 months.  In any event, her own records reflect relatively routine treatment for [Plaintiff's] back pain and they do not provide support for the degree of limitation noted in her February 2018 letter.  Further, her opinion is inconsistent with the opinions from the State agency consultants, all of whom found [Plaintiff] capable of a range of light work.

[Filing No. 10-2, at ECF p. 37.]  Thus, the ALJ reasonably concluded that discrepancies between Dr. Seele's treatment records and other consulting opinions and her statements in the letter rendered her opinion less reliable and persuasive.  While the ALJ did not explicitly discuss the regulatory factors outlined in 20 C.F.R. § 416.927(c), he was not required to do so.  Rather, the ALJ adequately articulated the basis for his conclusion that Dr. Seele's opinion was inconsistent with the overall medical record.  The ALJ's explanation contains good reasons to support his conclusion that Dr. Seele's opinion was not entitled to controlling weight.  Accordingly, there is no error in the ALJ's evaluation of Dr. Seele's opinion.

### IV. Conclusion

The ALJ provided good reasons for not giving treating physician Dr. Seele's opinion controlling weight. However, the ALJ ignored evidence that may support Plaintiff's subjective symptoms. Therefore, Plaintiff's brief in support of appeal and request for remand should be granted. [Filing No. 13.] On remand, the ALJ must adequately confront the evidence in the record indicating that injections and procedures were recommended for treating Plaintiff's back pain and that Plaintiff avoided those recommended injections and procedures, in part, because of his fear of side effects and potential negative outcomes, and also for financial and other personal reasons. In so doing, the ALJ must take care to ensure conclusions on Plaintiff's treatment, in light of his subjective symptom allegations, are logically supported by a medical source or other evidence in the record.

Any objection to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance to 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 3/12/2021

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

10